## WHEATLEY v. REX–HIDE, Inc.*
### No. 15246.

District Court, N. D. Illinois, E. D.

Feb. 11, 1938.

*Decree affirmed — F.2d —.

Zane, Trueblood & Johnson, of Chicago, Ill., for plaintiff.

Davis, Lindsey, Smith & Shonts, of Chicago, Ill., for defendant.

HOLLY, District Judge.

Plaintiff charges defendant with infringement of his patent No. 1621388, relating to a rubber flap for use on pneumatic tires. In the operation of automobiles and trucks having pneumatic tires the pressure upon the tire causes the inner tube to come into contact with the rim and the tube to be pinched between the bead of the tire and the rim, seriously injuring it. Attempts had been made to correct this condition and plaintiff devised an endless, all rubber tire flap on which the patent above mentioned was granted.

The contour of the flap devised by plaintiff is relatively thick at the central portion, concave inwardly and has approximately the same contour after installation; the convex side opposite the concave portion forms a smooth fillet at the tire base, the flap, so constructed, being "adapted to protect the inner tube from contact with the rim and from pinching by the tire base".

Defendant denies the validity of the patent and charges that plaintiff has been guilty of such laches that he may not now maintain this action against defendant.

As to the validity of the Patent.

Plaintiff was not the first to attempt to find a method of protecting the inner tube of a pneumatic tire from injury through contact with the rim of the tire. In 1894 a British patent was granted to one Frank King, a British subject. In his declaration he stated that his invention had for its object the protection of the "air chamber" (inner tube) against abrasion or nipping. He stated that when inflation is carried to a high degree the inner tube is forced into every available crevice with the result that the movement of the flexible portions of the wheel would crush, rip, or tear portions of the inner tube which were forced into said crevice. He proposed to remedy this condition by means of a stopping of canvas made as nearly as possible to fit the crevices into which the inner tube would otherwise be forced. He then superposed on the canvas, or other material, a piece of rubber or equivalent material of sufficient dimensions to cover the line of junction between the crevice and the stopping, feathered off

or reduced towards the edges which, under pressure, would fill in the remaining crevices leaving the inner tube only to adapt itself to the resulting gentle curves, thus removing the possibility of damage.

Here we have a recognition of the problem and as a device for remedying it, the application of a flap, so designed as to fill in the crevices resulting from pressure upon the tire. It is true King thought only of using a stopping but he did get the idea of the use of rubber on the stopping to fill the crevices.

In 1914, a British patent was granted to one George William Beldan and Albert Ariat Benjamin Ryall for an endless rubber band to . be used with rubber tires. The primary purpose of this band was for use inside rubber tires for holding them in the rim, but furthermore, it was stated in the specifications, "they support the beads and prevent their toes from 'corking up' when the vehicle, on the wheels of which they are fitted, is going around a corner, which tends to pinch the inner tube, and sometimes caused a burst" and "they prevent the inner tube coming in contact with rusty rims, and therefore there is nothing touching the tube which can harm it * * *".

On September 21, 1926, a patent was granted by the United States Patent Office to one Charles C. Clark for a "Protecting Flap for Pneumatic Tires". This patent was based on an application filed October 3, 1921. Wheatley's application was filed December 3, 1923. Plaintiff contends that the Clark patent does not anticipate Wheatley, the argument being that the two inventions are not the same, and that Wheatley was the first inventor in fact.

Clark, in his application, states that his invention relates to pneumatic tires of the double tube type for use on vehicles and in particular to a protector placed between the inner tube and the bead edge of the outer casing, such a protector being commonly known as a tire flap, used to prevent the inner tube from coming in contact with the wheel rim and from being squeezed or chafed between the two sides of the outer casing where they are attached to the wheel rim. This protector he describes as being made of elastic material, such as soft, vulcanized rubber, and being endless. The drawings accompanying the patent show an endless flap, differing in contour but slightly from that of the Wheatley flap. It is true that the Clark flap was

designed for use with a clincher type of tire, the kind then generally in use, and Clark states that in mounting the flap is stretched during the process of mounting and thereafter remains under a circumferential tension, and that Wheatley describes his as "floating", so that it is adapted to tires of a different design, but this does not seem to me a sufficient difference to prevent Clark's invention from constituting an anticipation of Wheatley, if Clark in fact was the first inventor. Clark's claim was filed October 3, 1921, Wheatley's December 3, 1923. Presumably, then, Clark was the first inventor. Evidence was introduced tending to show that Wheatley's invention was prior to Clark's, relating back to the fall of 1920. Without stopping here to analyze the evidence, it appears to me insufficient to overcome the presumption in favor of Clark.

. I am of the opinion that the Clark patent is an anticipation of Wheatley's, if the latter patent is not anticipated by the teaching of the two English patents above mentioned. I find that if the patent in suit is valid it is infringed. I also find that the plaintiff is the owner of said patent.

### As to Laches.

But whether or not Wheatley's patent is valid, I am of the opinion that Wheatley is barred from maintaining this action by reason of laches.

The facts upon which defendant relies as showing laches are set out in its brief as follows:

"The patent in suit issued March 15, 1927. A notice of infringement was first given by a letter from Delos Haynes to defendant dated March 31, 1927. Defendant replied by letter of April 22, 1927 stating this matter has been investigated by our patent attorney, who advises us that we do not infringe upon this patent. Over eight years afterward a second notice of infringement was given. This was by letter dated August 8, 1935, written by Wheatley himself. This letter was answered by Attorney Pierson to whom the matter had been referred by defendant. In his answering letter dated August, 1935, reference was made to the infringement notice of March 31, 1927, and the above-noted reply thereto and Mr. Wheatley was told that defendant had again been advised that his product did not appear to infringe the patent and that definite reasons appear for regarding the patent as invalid. The

bill of complaint was not filed for nearly a year thereafter, to-wit, on July 25, 1936.

"Throughout the first long period following defendant's reply to Mr. Haynes, defendant had been widely distributing the accused product which had been advertised in the leading trade journal India Rubber & Tire Review beginning more than two years prior to the issuance of the patent in suit.

"There is no pretense that plaintiff Wheatley was not fully aware of defendant's operations. Indeed more than a year after defendant had replied to the first notice of infringement Wheatley telegraphed defendant for a supply of flap curing rings and defendant replied by letter of May 18, 1928, expressing willingness to supply the rings and stating,

" 'Aside from that, I believe you would be much further ahead if you bought your flaps from us. I am enclosing herewith our current price list, and I cannot believe that the quantity of flaps you need that it would pay you to manufacture them. We are now making about 10,000 of these flaps per day, and naturally, our manufacturing cost is very low.'

"Wheatley replied under date of May, 1928, making no reference whatever to the subject of infringement of his patent, but ordering 19 curing rings and stating:

" 'Regarding your suggestion of our purchasing flaps from yourself, wish to say that when we are in production on our regular line of tires we will undoubtedly get in touch with you with reference to supplying our requirements.'

"The rings ordered were supplied as per invoice. Defendant's Exhibit O, dated June 1, 1928.

"Mr. Kempel, Vice-President and General Manager of the defendant corporation, gave testimony concerning the extensive investments which were made in the flap business some considerable time subsequent to his reply to the March 1927 notice of infringement, and subsequent to the correspondence of May, 1928, with Wheatley. In this connection interior and exterior photographs of defendant's plant were exhibited. The very considerable investments to which the witness referred were made after August 1, 1927. Referring to the first of these photographs, the witness testified:

" 'One of these three units (tube machines, conveyors, supplying and trimming machines) was in use before August 1, 1927. The other two of the three units were put in after August 1, 1927.'

"Then, referring to the next of these photographs showing the vulcanizing room, he testified that the building was erected in 1929 and that the equipment was put in during that year. The next photograph shows the exterior of the building and the photograph shows the interior of the rim storage building and witness testified that 60 per cent of the rims were bought in 1928, these being the same as the 'rings' supplied to Mr. Wheatley. The two remaining photographs show interior and exterior views of the flap storage warehouse which the witness testified was erected in 1929. He testified from original invoices that the investments made after August 1st totalled $89,793.74. Buildings and machinery constituted the larger items totalling $84,866.14."

This is a fair summary of the evidence bearing upon this branch of the case. To my mind it established such laches upon the part of the plaintiff as bars his right to recover damages and also bars him from obtaining relief by way of injunction. George J. Meyer Mfg. Co. v. Miller Mfg. Co., 7 Cir., 24 F.2d 505.

It has often been said that mere delay or acquiescence will not defeat the right of a patentee from maintaining the monopoly granted by his patent. But the fact remains that he has a monopoly which enables him to charge a monopoly price for the thing he has invented and even to prevent the public from having the benefit of the product, through withholding it from the market, though, as the history of the patent office shows, if he had not made the invention at the time he did, some one else probably would shortly have done so. One having such a privilege should be required to exercise some diligence in the prosecution of his right. He should not be permitted to stand idly by while some one else takes the risk of building up the business, and then, if it proves profitable, take the profits and prevent that other from carrying on a business he has developed.

I have read the cases cited by plaintiff on this point, but I do not consider them in conflict with George J. Meyer Mfg. Co. v. Miller Mfg. Co., supra.

I had heretofore denied the motion made to dismiss the bill on the ground that it appeared from the face of the bill that plaintiff had been guilty of such laches

546

as barred his right to maintain the action. I felt then I should not pass upon that question until full hearing had been had upon the bill and answer.

I will confer with counsel at 4:30 on February 16, 1938, on the drafts of findings of fact and conclusions of law.