**H. Charles TAPALIAN, Plaintiff,**

v.

**TOWN OF SEEKONK and James V. Tusino, Defendants.**

**No. CIV.A.00–12389–PBS.**

United States District Court,
D. Massachusetts.

March 14, 2002.

---

Lynch & Lynch, South Easton, MA, James W. Simpson, Jr., Merrick & Louison, Patrick J. Costello, Merrick, Louison & Costello, Boston, MA, John B. Reilly, Reilly & Nikolyszyn, LLP, Warwick, RI, for Defendants.

## MEMORANDUM AND ORDER

SARIS, District Judge.

The Court rules on the Motion of Defendants, Town of Seekonk and James V. Tusino ("Tusino"), for Summary Judgment as follows:

■ 1. Defendants argue that the claims of plaintiff are barred by the compulsory counterclaim rule. Fed.R.Civ.P. 13(a) provides:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of [sic] whom the court cannot acquire jurisdiction.

The state rule is similarly worded. *See* Mass. R. Civ. P. 13(a). The doctrine of res judicata or claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and bars further litigation on all matters that were or should have been adjudicated in the action. *See* *Heacock v. Heacock,* 402 Mass. 21, 23, 520 N.E.2d 151, 152–53 (1988).

■ The purpose of the compulsory counterclaim rule is "to prevent multiplicity of actions and to achieve resolution in a

single lawsuit of all disputes arising out of common matters." *Carteret Sav. & Loan Ass'n v. Jackson,* 812 F.2d 36, 38 (1st Cir.1987). "The scope of 'transaction or occurrence' is liberally interpreted, as the court determines whether there is a logical relationship between the claim in suit and the counterclaim." *Genentech, Inc. v. Regents of the Univ. of California,* 143 F.3d 1446, 1456 (Fed.Cir.1998). "In making this determination, which invokes judicial discretion, the court may give weight to the advantages of consolidation, efficiency, and expedition...." *Id.*

 "[Claim preclusion applies] even though the claimant is prepared in a second action to present different evidence or legal theories to support his claim or seeks different remedies." *Heacock,* 402 Mass. at 23, 520 N.E.2d 151. Courts have held claims to be compulsory counterclaims to earlier actions, and thus precluded, even though the later actions involved a different body of law and different remedies. *See, e.g., In re Iannochino,* 242 F.3d 36, 38 (1st Cir.2001) (holding that suit for professional malpractice was compulsory counterclaim to earlier award of fees in bankruptcy to debtor's attorney); *Genentech,* 143 F.3d at 1456 (holding claim for antitrust violation to be compulsory counterclaim to earlier suit for patent infringement); *Pochiro v. Prudential Ins. Co.,* 827 F.2d 1246, 1251–53 (9th Cir.1987) (holding former employee's claims for defamation, abuse of process, breach of employment contract and intentional interference with business relationship to be compulsory counterclaims to employer's prior state court action for appropriating confidential consumer information).

 There are several noteworthy caveats to these guiding principles. First, "the pleader need not state the claim if ... at the time an action was commenced the claim was the subject of another pending action...." Mass. R. Civ. P. 13(a). *See Travenol Labs., Inc. v. Zotal, Ltd.,* 394 Mass. 95, 97 n. 4, 474 N.E.2d 1070, 1072 n. 4. Moreover, "a party need not assert a counterclaim that has not matured at the time he served his pleading .... [and a] counterclaim acquired by the a defendant after he has answered is not compulsory, even if it arises out of the same transaction as does the plaintiff's claim." *Chestnut Hill Gulf, Inc. v. Cumberland Farms, Inc.,* 788 F.Supp. 616, 622 (D.Mass.1992) (quoting *Boston & Maine Corp. v. United Transp. Union,* 110 F.R.D. 322, 328 (D.Mass.1986)) (internal quotations omitted).

 Under Massachusetts law, a dismissal with prejudice is "an adjudication on the merits as fully and completely as if the order had been entered after trial." *Bagley v. Moxley,* 407 Mass. 633, 637, 555 N.E.2d 229 (1990). "[A] stipulation of dismissal constitutes a final judgment." *Craft v. Kane,* 51 Mass.App.Ct. 648, 652, 747 N.E.2d 748 (2001). Federal courts must "give the same preclusive effect to a state-court judgment as would the courts of the State rendering the judgment." *McDonald v. City of West Branch, Michigan,* 466 U.S. 284, 287, 104 S.Ct. 1799, 1801, 80 L.Ed.2d 302 (1984). Accordingly, an action that would be dismissed by a Massachusetts court under the doctrine of claim preclusion must be dismissed in this Court as well.

This litigation is the fourth round in an ongoing series of legal disputes between the plaintiff, Tapalian, and the Town of Seekonk. In 1987, Tapalian submitted a Subdivision Plan to the Town of Seekonk Planning Board for the development of a portion of his real property known as "Pembroke Estates." When the Planning Board rejected the plan, Tapalian brought suit against the Town, the Planning Board and the Town Planner challenging the de-

nial of his plan and seeking damages ("Tapalian I"). This litigation was concluded in October, 1994, when the parties entered into an Agreement for Judgment establishing terms and conditions for the reconstruction of an "Improved Davis Street" and the First Phase of the Pembroke Estates Subdivision.

The second and third rounds of litigation began in June, 2000. First, on November 23, Tapalian filed a Verified Complaint for Contempt, alleging that the Town and various officials, including Tusino, the Superintendent of Public Works, had violated the Agreement for Judgment ("Contempt Petition"). The very next day, the Town filed a Motion in Bristol Superior Court, seeking to enjoin Tapalian from construction on the subdivision until Davis Street was completed ("Tapalian II"). In his opposition to Tapalian II, Tapalian asserted that Tusino and the Town had breached the covenant of good faith under Tapalian I, abused its discretion and solicited bribes, but did not assert any counterclaims against the Town. Tapalian's Contempt Petition was dismissed without prejudice on June 28, 1999. Tapalian II, meanwhile, was settled by a Stipulation of Dismissal with Prejudice on November 27, 2000.

■ Tapalian commenced the present action ("Tapalian III") on October 16, 2000. As in Tapalian II, all of the claims asserted against the Town arise out of the development of the Pembroke Estates Subdivision, including the construction of Davis Street. Accordingly, the Stipulation of Dismissal with Prejudice precludes all claims based on the same transactions. Tapalian's counterclaims against the Town had already matured at the time he served his pleading in Tapalian II, and the claims raised in this litigation were not the subject of the Contempt Petition already pending when Tapalian II was commenced. In short, none of the exceptions to the doctrine of claim preclusion applies, making the Town's motion on Tapalian's claims ripe for summary judgment.

■ Tapalian protests that he has asserted a violation of his equal protection rights by the Town that continued beyond the stipulation of dismissal in Tapalian II. Although the Verified Complaint (¶ 91) contains a vague reference to the town's allegedly ongoing pattern of misconduct, it does not clearly and concretely enumerate any instances of actionable behavior occurring after June 30, 2000, the date Tapalian II was filed. It thus fails to meet the minimal requirements of notice pleading. Plaintiff never amended the verified Complaint to cure these defects. It is true that plaintiff's Opposition to the Motion for Summary Judgment and Pre–Trial Summary of Facts refer to three instances of post-June 30 conduct by the Town that, if proven, might conceivably support his claim against the Town. However, simply inserting these claims into either or both of these pleadings is not tantamount to amending the complaint. At this late date, the prejudice to the opposing party precludes me from allowing such an amendment.

■ A different result is necessary, however, with respect to the claims against Tusino in his individual capacity. Under the doctrine of claim preclusion, a final judgment on the merits precludes only "the parties or their privies from relitigating issues that were or could have been raised" in an earlier action. Puerto Rico Maritime Shipping Auth. v. Federal Maritime Comm'n, 75 F.3d 63, 66 (1st Cir. 1996) (quoting Manego v. Orleans Bd. of Trade, 773 F.2d 1, 5 (1st Cir.1985)) (internal quotations omitted). This Circuit has held that "res judicata can sometimes operate to bar the maintenance of an action by persons who, technically, were not par-

ties to the initial action." *Gonzalez v. Banco Central Corp.*, 27 F.3d 751, 757 (1st Cir.1994).

■■■ Privity is generally held to exist "if a nonparty either substantially controlled a party's involvement in the initial litigation or, conversely, permitted a party to the initial litigation to function as his *de facto* representative." *Id.* at 757. *See also Iannochino*, 242 F.3d at 46. Under either of these two prongs, however, privity "is almost always difficult to gauge." *Gonzalez*, 27 F.3d at 756. With respect to the first theory of substantial control, "[t]he burden of persuasion ultimately rests with him who asserts that control (or the right to exercise it) existed to such a degree as would warrant invoking nonparty preclusion." *Id.* at 759. On the other hand, "contemporary caselaw has placed the theory of virtual representation on a short tether, significantly restricting its range . . . . There is no black-letter rule." *Gonzalez*, 27 F.3d at 758. Tusino has failed to show that at the time *Tapalian II* was filed, he was in privity with the Town in either of the two senses that the caselaw requires. Indeed, the issue was not even briefed and is waived. Accordingly, the doctrine of claim preclusion does not bar Tapalian's claims against Tusino.

■■ 2. The Court denies the motion for summary judgment against Tusino on the equal protection claims. In order to establish an equal protection claim, the plaintiff must show that (1) he was selectively treated compared with others similarly situated; and, (2) that such selective treatment was based on impermissible considerations like intent to punish the exercise of constitutional rights or malicious or bad faith intent to injure a person. *See Barrington Cove Ltd. P'ship v. Rhode Island Housing & Mortgage Finance Corp.*, 246 F.3d 1, 7 (1st Cir.2001).

There are the hotly disputed questions of fact which can not be resolved on this record regarding the alleged disparate treatment of the plaintiff vis à vis similarly situated contractors/developers in Seekonk, and regarding the allegation of gross abuse of power (i.e., the claims of attempted extortion and retaliation). Tapalian alleges that Tusino requested "two girls and a boat", and similar kinds of benefits, and then retaliated with punitive construction requirements when Tapalian declined. If true—and Tusino vigorously denies the allegations and premises his defamation counterclaim on them—the misconduct rises to the level of an "abuse of power that shocks the conscience, or action that is legally irrational." *Baker v. Coxe*, 230 F.3d 470, 474 (1st Cir.2000); *see Village of Willowbrook v. Olech*, 528 U.S. 562, 565, 120 S.Ct. 1073, 1075, 145 L.Ed.2d 1060 (2000) (Breyer, S. concurring) (pointing out that differential treatment plus an extra factor like "vindictive action," "illegitimate animus" or "ill will" will support an equal protection claim by a class of one).

### ORDER

The Motion for Summary Judgment is **ALLOWED** with respect to the claims against the Town, and **DENIED** with respect to the claims against Tusino.