692

## MID–CONTINENT INV. CO. et al. v.
## MERCOID CORPORATION.
### Civil Action No. 2070.

District Court, N. D. Illinois, E. D.

Jan. 6, 1942.

Spencer, Marzall, Johnston & Cook, of Chicago, Ill. (Wilfred S. Stone, of

Chicago, Ill., of counsel), for Mid-Continent Inv. Co.

Bair & Freeman, of Chicago, Ill., for Minneapolis-Honeywell Regulator Co.

Langdon Moore and L. Kerans Moore, both of Chicago, Ill., for Mercoid Corporation.

IGOE, District Judge.

## Findings of Fact.

1. Plaintiff Mid-Continent Investment Company is a corporation of Missouri; plaintiff Minneapolis-Honeywell Regulator Company is a corporation of Delaware, licensed to do business in the State of Illinois, with a registered agent in Chicago, Illinois.

2. Defendant, The Mercoid Corporation, is a corporation of Delaware with a regular and established place of business in Chicago, Illinois.

3. Plaintiff Mid-Continent Investment Company brought this suit against the defendant on September 10, 1940, charging contributory infringement of its patent No. 1,758,146, granted Walter M. Cross, May 13, 1930, for a Domestic Heating System, by making and selling combustion responsive low limit controls or switches that may be used in said domestic heating system for the purpose of preventing the fire in the furnace from going out.

4. Plaintiff Mid-Continent Investment Company mailed to the defendant a formal notice of infringement of the patent in suit on November 21, 1932, alleging the accused device in the suit at bar was an infringement of the Cross patents Nos. 1,758,146 and 1,758,147.

5. Plaintiff Mid-Continent Investment Company, during August 1935, brought suit against E. O. Smith of Carthage, Missouri, for infringement of the domestic heating system patent of Cross No. 1,758,146 by installing in his home a heating system including controls manufactured by the defendant.

The Court found the patent valid and that the heating system installed in the residence of Smith infringed the heating system patent of Cross. The Mercoid Corporation provided the defense of Smith but was not made a party to the suit nor was the manufacture and sale of the Mercoid M-61 an issue in this suit.

6. The Cross patent No. 1,758,146 is for a method or system for preventing the fire in an automatic coal stoker furnace from going out during long periods of mild weather by inserting in the automatic control system a low limit switch responsive to combustion conditions within the furnace to operate the stoker whenever a predetermined low temperature within the furnace is reached. It is admitted that Cross did not invent the low limit switch, also called a combustion stoker switch. The combustion stoker switch illustrated in the Cross patent is of the same appearance, construction and operation as the defendant's Mercoid Figure 37 temperature responsive limit switch patented by defendant and on the market prior to 1925. Defendant placed on the market at the same time the Mercoid Figure 50 temperature responsive limit switch made under the same patent. The Mercoid Figure 50 was modified as to construction but identical in function and operation and was placed on the market in 1929 as the Mercoid M-51 temperature responsive furnace control. This modification was also patented. The Mercoid M-61 temperature responsive limit switch, the accused device, was made under the same patent as the M-51 and is identical in function, operation and use and in addition is capable of use as a combustion stoker switch when installed in a heating system. The Mercoid TJV and JMV controls, also accused devices, do not operate at a predetermined low temperature.

7. Plaintiff Mid-Continent Investment Company has never made and has never installed heating systems in accordance with the Cross patent No. 1,758,146.

8. Plaintiff Minneapolis-Honeywell Regulator Company upon motion by defendant was made a party plaintiff by order of this Court as the exclusive licensee of the Cross patents Nos. 1,758,146 and 1,758,147.

9. Plaintiff Minneapolis-Honeywell Regulator Company does not make or install heating systems.

10. Defendant The Mercoid Corporation has never made or installed heating systems.

11. Cross Coal-O-Matic Company, predecessor in title of plaintiff Mid-Continent Investment Company, did, during the years 1928, 1929, and 1930, engage in the business of installing heating systems including stokers, and controls therefor bought from both defendant and the unwilling

plaintiff Minneapolis-Honeywell Regulator Company.

There is no proof that Cross Coal-O-Matic Company ever practiced the invention of the Cross patent prior to the grant thereof in 1930.

There is proof that Minneapolis-Honeywell Regulator Company developed its combustion stoker switch independently of the Cross patent and had it on the market prior to the grant thereof.

12. Plaintiff Mid-Continent Investment Company succeeded to the title of the Cross patent No. 1,758,146 on June 2, 1932. Its predecessor in title, Cross Coal-O-Matic Company, on December 23, 1931, granted Minneapolis-Honeywell Regulator Company an exclusive license to make, use and sell and to sublicense others to make, use and sell the inventions described in the Cross patents Nos. 1,758,146 and 1,758,147, as applied to coal stokers, in which it was agreed that the royalty payments to be made thereunder shall be made or based only upon what are known to the parties as a combustion stoker switch, specifically defined as a combustion stoker control unit including an automatic electric switch responsive directly to temperatures of combustion gases or boiler water produced by an automatic coal fed stoker. Minneapolis-Honeywell Regulator Company agreed to pay a royalty for each licensed combustion stoker switch made and sold by it and by its sub-licensees.

13. Minneapolis-Honeywell Regulator Company exercised its right under its exclusive license and granted a sub-license to Detroit Lubricator Company on July 19, 1933, to make and have made for it and to use and sell combustion stoker switches and to use and sell any and all apparatus in combination with such a combustion stoker switch for use in, or to constitute an embodiment of, the invention covered by said patent No. 1,758,146; to pay Minneapolis-Honeywell Regulator Company a royalty for each licensed combustion stoker switch sold by it and to mark each combustion stoker switch made and sold by it under said sub-license with the Patent Notice: "This control carries with it a license to use a system of preventing extinguishment of the fire when operating under low heat requirement conditions as covered by patents Nos. 1,758,-146 or 1,758,147 and/or 1,882,341, as the case may be." The policy of serving purchasers with notice that its combustion stoker switch carries with it a license to use the system shown in the Cross patents has been continuously followed by Minneapolis-Honeywell Regulator Company to as late as 1940.

14. Plaintiff Mid-Continent Investment Company did not practice the invention but received its revenue from the sale of combustion stoker switches made and sold by its exclusive licensee and sub-licensee both of which conveyed with the sale of each combustion stoker switch a license to use the domestic heating system covered by the Cross patent No. 1,758,146.

Plaintiff Mid-Continent Investment Company has attempted through its method of business to expand the scope of its domestic heating system patent to monopolize the sale of combustion stoker switches not covered by said Cross heating system patent.

15. During February 1932, plaintiff Minneapolis-Honeywell Regulator Company addressed and mailed a letter to a general list of stoker manufacturers entitled "Re: Cross Patents" in which it announced that Minneapolis-Honeywell Regulator Company had obtained an exclusive license under the Cross patents Nos. 1,758,146 and 1,758,147. The letter stated said Cross patents do not cover individual controls as such and because these patents cover a system involving the controls and the stoker and not the controls alone, Minneapolis-Honeywell Regulator Company had worked out a special plan whereby a license under these patents would be granted by it to the purchaser of its special stoker controls; through the inclusion of one of these units, the entire stoker installation would be licensed under one of the above named patents.

Several months thereafter, plaintiff Mid-Continent Investment Company addressed and mailed a letter to the stoker manufacturers calling attention to the same patents as being owned by the Mid-Continent Investment Company and stated the sale of a stoker together with such an instrument, or the sale of the instrument alone constitutes an infringement of these patents, and suggested that, in the purchase of control instruments, the purchaser ascertain if he was also purchasing rights under the above named patents so that he would be fully protected in this matter.

In 1934, Mid-Continent Investment Company wrote a customer of the defendant that it had been recently called to its attention that the customer was purchasing controls from a company not licensed by Mid-Continent Investment Company to sell controls; that Mid-Continent Investment Company wished to make this a formal notification that it considered the sale and use of controls for this purpose an infringement of the Cross patent No. 1,758,146.

The parties plaintiff herein, as shown in the record of this case, through these letters to customers of defendant, have entered into unfair competition with defendant in an attempt to establish a monopoly in the sale of unpatented combustion stoker switches or low limit controls.

16. After bringing suit against Smith in 1935, Mid-Continent Investment Company first attempted to submit a license under said Cross patent No. 1,758,146 to the defendant and the license was later submitted by the other party plaintiff Minneapolis-Honeywell Regulator Company to The Mercoid Corporation under the same general terms as expressed in the sub-license Minneapolis-Honeywell Regulator Company granted to Detroit Lubricator Company, requiring The Mercoid Corporation to pay $1.25 upon the sale of each of its patented M–61 controls.

17. On November 24, 1939, Mid-Continent Investment Company wrote defendant calling attention to the Mid-Continent v. Smith suit; that The Mercoid Corporation assumed the defense in this action, and that the installation in the Smith home was a Mercoid installation furnished and installed through one of the Mercoid dealers. This letter also stated The Mercoid Corporation was notified by Mid-Continent Investment Company during the year 1932 that the sale and installation of Mercoid controls for maintaining a fire bed in a coal stoker fed furnace constituted an infringement of Cross patent No. 1,758,146; that inasmuch as the Cross patent had been adjudicated as valid and infringed by The Mercoid Corporation, Mid-Continent Investment Company, before the institution of an action for damages, was writing The Mercoid Corporation to inquire whether or not it desired to discuss the question of settlement of damages.

Thereafter, Mid-Continent Investment Company submitted a license to defendant which required The Mercoid Corporation to pay $1 for the sale of each of its patented M–61 controls, and in addition, pay Mid-Continent Investment Company the sum of $5,000 for the past sales of its patented M–61 controls. Minneapolis-Honeywell Regulator Company, the exclusive licensee under the Cross patent No. 1,758,146, was willing to allow Mid-Continent Investment Company to execute the proposed license with The Mercoid Corporation.

18. The parties plaintiff, Mid-Continent Investment Company and Minneapolis-Honeywell Regulator Company, by offering and acquiescing in the offer of Mid-Continent Investment Company to grant the defendant a license in 1935, upon the payment of royalty of $1.25 for the sale of each Mercoid M–61 control, patented per se by The Mercoid Corporation, and in 1940, upon the payment of a royalty of $1 for the sale of each M–61 control, patented per se by The Mercoid Corporation, have in collusion conspired with each other in an attempt to monopolize the sale of combustion stoker switches, stoker controls or low limit controls, not covered by the Cross patent No. 1,758,146 and patented per se by The Mercoid Corporation. The parties plaintiff have attempted to collect $5,000 for past sales of defendant's M–61 controls not covered by the Cross patent and patented per se by The Mercoid Corporation.

19. The parties plaintiff have conspired with each other and with the sub-licensee Detroit Lubricator Company to establish a monopoly in the sale in interstate commerce of combustion stoker switches, or low limit controls, in violation of the Anti-Trust Laws of the United States.

20. Defendant is a manufacturer of temperature responsive controls for heating systems and is not in the business of installing automatic coal stokers with an automatic control system therefor.

Defendant makes and has made low limit controls since prior to 1925, which are capable of use in automatic coal stoker heating systems to prevent the fire in the furnace from going out during long periods of mild weather.

### Conclusions of Law.

■ 1. Neither defendant nor a dealer of defendant installed the heating system in the Smith residence held to be an infringement of the Domestic Heating Sys-

**696**

tem patent to Cross No. 1,758,146. Mid-Continent v. Smith is not res adjudicata against the defendant as to contributory infringement of the Cross patent, the defense of laches, or the defense that plaintiff has attempted through its method of doing business to expand its patent to monopolize the sale of combustion stoker switches.

■ 2. Plaintiff Mid-Continent Investment Company, through its predecessor in title Cross Coal-O-Matic Company, had knowledge of defendant's low limit control prior to the granting of the patent in suit, and Cross Coal-O-Matic Company requested and received from defendant, in 1930, suggestions as to the use of its controls for the purpose of preventing the fire from going out. Plaintiff Mid-Continent Investment Company sent defendant a formal notice of infringement of the patent in suit November 21, 1932, but waited until September 10, 1940, before it brought suit against defendant for contributing to the infringement of said patent.

3. Plaintiff Mid-Continent Investment Company is barred from maintaining this cause of action by reason of laches. Wheatley v. Rex-Hide, D.C., 25 F.Supp. 543; Id., 7 Cir., 102 F.2d 940.

■ 4. The patented Mercoid M-61 stoker control is a modification of the patented Mercoid Figure 50 furnace control on the market in 1925. The Mercoid M-61 was not built for the express purpose of providing purchasers with means to perform the Cross patented heating system and does not contribute to the infringement of the Cross patent in suit. The Mercoid TJV and JMV controls do not contribute to the infringement of the Cross patent here in suit.

■ 5. Plaintiff Mid-Continent Investment Company's method of doing business falls within the condemnation of Carbice Corporation v. American Patents Development Corporation, 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819, and Leitch Mfg. Co. v. Barber Co., 302 U.S. 458, 58 S.Ct. 288, 82 L.Ed. 371, as the practical equivalent of granting a written license with the condition that the patented system may be practiced only with combustion stoker switches purchased from its licensees. The patent is being utilized to gain a monopoly beyond its legitimate scope and its sole purpose as used by plaintiff Mid-Continent Investment Company is to suppress competition in the manufacture and sale of combustion stoker switches.

6. Plaintiff Mid-Continent Investment Company's method of doing business leads to the suppression of competition in unpatented appliances and is sufficient to deny the relief sought in its bill of complaint.

7. Plaintiff Mid-Continent Investment Company is not in a position to maintain this suit. American Lecithin v. Warfield, 7 Cir., 105 F.2d 207.

■ 8. Plaintiff Mid-Continent Investment Company has conspired with its licensees. The exclusive licensee, plaintiff Minneapolis-Honeywell Regulator Company, having developed its combustion stoker switch independently of the Cross patent and marketed it before the grant thereof, conspired with Mid-Continent Investment Company in restraint of trade in interstate commerce and conspired to establish a monopoly in interstate commerce in an unpatented appliance beyond the scope of the patent in suit in violation of the Anti-Trust Laws.

9. Plaintiffs' combination constitutes a restraint of trade, an attempt to monopolize, and monopolization under Title 15, Sections 1 and 2, U.S.C.A., and the defendant is entitled to injunctive relief under Title 15, Section 4, U.S.C.A.