**CRITICAL–VAC FILTRATION CORPORATION, Plaintiff–Appellant,**

v.

**MINUTEMAN INTERNATIONAL, INC., Defendant–Appellee.**

**Docket No. 00–7104.**

United States Court of Appeals, Second Circuit.

Argued: June 19, 2000.

Decided: Nov. 21, 2000.

**698**

Paul R. Braunsdorf (Laura W. Smalley, on the brief), Rochester, NY, for Plaintiff-Appellant.

James R. Muldoon (David E. Peebles, of counsel, James J. Hill, on the brief), Syracuse, NY, for Defendant-Appellee.

Before: MINER, McLAUGHLIN and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

The question presented is whether the District Court properly dismissed plaintiff-appellant's complaint on the ground that its antitrust claims were compulsory counterclaims that had to be raised in a previous patent infringement suit.

Critical–Vac Filtration Corporation ("C–Vac") appeals a January 7, 2000 order[1] of the United States District Court for the Northern District of New York (Howard G. Munson, *Judge*) dismissing its complaint, which alleged violations of antitrust laws by Minuteman International, Inc. ("Minuteman"). The District Court held that C–Vac's claims were barred because, pursuant to Federal Rule of Civil Procedure 13(a), they were compulsory counterclaims that had to be asserted by C–Vac in Minuteman's earlier patent infringement suit against C–Vac in the United States District Court for the Northern District of Illinois. C–Vac denies that its current claims were compulsory counterclaims in the Illinois action and, relying on *Mercoid Corp. v. Mid–Continent Inv. Co.*, 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376 (1944), maintains that the Supreme Court has recognized an exception to Rule 13(a) for antitrust actions following patent infringement litigation between the same parties, and that under this exception C–Vac's claims against Minuteman in the instant action are not barred. For the reasons stated below, we affirm the order of the District Court.

**I.**

Both C–Vac and Minuteman manufacture and sell replacement high efficiency particulate air filters ("HEPA filters") for industrial and commercial use vacuum cleaners built by Minuteman. They are the only two manufacturers of HEPA filters in the United States. In 1995, Minuteman initiated an action for patent infringement in the Northern District of Illinois, alleging that the replacement filters marketed by C–Vac and other defendants infringed on Minuteman's "reissue patent."[2] *See Minuteman Int'l, Inc. v. Critical–Vac Filtration Corp.*, No. 95 C 7255, 1997 WL 370204 (N.D.Ill. Jun.27, 1997), *aff'd*, 152 F.3d 947, 1998 WL 166583 (Fed.Cir.1998) (unpublished table decision) ("the Illinois action"). In its defense, C–Vac argued that Minuteman's reissue patent was invalid and unenforceable because Minuteman had improperly broadened the scope of its original patent by making deliberate misrepresentations to the Patent Office in its reissue application. *See*

---

**1.** Appellate jurisdiction exists despite the fact that a separate judgment was not entered. *See Selletti v. Carey,* 173 F.3d 104, 109–10 (2d Cir.1999) ("Where an order appealed from clearly represents a final decision and the appellees do not object to the taking of an appeal, the separate document rule is deemed to have been waived and the assumption of appellate jurisdiction is proper."). Accordingly, we have jurisdiction over the appeal of the January 7, 2000 order.

**2.** A reissue patent is an amended patent that may be issued by the Patent Office following an application by the patentee "[w]henever [the original] patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid." 35 U.S.C. § 251.

*id.* at *6–*8. C–Vac also counterclaimed seeking a declaratory judgment that Minuteman's reissue patent was invalid— and, therefore, that it could not have been infringed—along with attorneys' fees and costs.[3]

The Illinois court granted summary judgment in favor of C–Vac on Minuteman's patent infringement claim, reasoning that "Minuteman improperly acquired a broader claim through reissue" and thereby sought to acquire a patent over "subject matter deliberately surrendered during prosecution [of the original patent]." *Id.* at *8. Its holding did not deny the validity of Minuteman's original patent but, rather, that of the broader reissue patent. *See id.* at *6–*8.

In July 1999, C–Vac filed the complaint in the instant suit, alleging that Minuteman engaged in acts of monopolization and attempted monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, and Sections 340 *et seq.* of the General Business Law of New York. C–Vac claims that, in an attempt to secure a monopoly, Minuteman: (1) committed a fraud on the Patent Office; (2) tried to enforce a patent it knew was invalid; and (3) engaged in sham litigation against C–Vac and other companies. C–Vac seeks monetary damages equal to its attorneys' fees and costs in this litigation, and triple its attorneys' fees and costs in the Illinois litigation. In response, Minuteman argues that C–Vac is barred from now asserting these claims because, under Federal Rule of Civil Procedure 13(a), they were compulsory counterclaims that had to be raised in the Illinois litigation.

Holding that C–Vac's antitrust claims had been compulsory counterclaims in the Illinois action, Judge Munson granted Minuteman's motion to dismiss the complaint. *See Critical–Vac Filtration Corp. v. Minuteman Int'l, Inc.,* No. 99–CV–1115,

2000 WL 14654, at *4 (N.D.N.Y. Jan.7, 2000). This timely appeal followed.

## II.

▮ Federal Rule of Civil Procedure 13(a) provides in relevant part:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader *has* against any opposing party, if it *arises out of the transaction or occurrence that is the subject matter of the opposing party's claim....*

(emphasis added). A claim is compulsory if "a *logical relationship* exists between the claim and the counterclaim and [if] the *essential facts of the claims are so logically connected* that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Adam v. Jacobs,* 950 F.2d 89, 92 (2d Cir.1991) (internal quotation marks omitted) (emphasis added). If a party has a compulsory counterclaim and fails to plead it, the claim cannot be raised in a subsequent lawsuit. *See, e.g., Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 41 L.Ed.2d 243 (1974).

On appeal, C–Vac argues that its claims in the instant case do not arise out of the same transaction or occurrence as its defenses and counterclaims in the Illinois litigation, and that it did not "have" its current claims at the time and therefore could not have pleaded them as counterclaims pursuant to Rule 13(a). C–Vac also argues that, in any event, the Supreme Court in *Mercoid Corp. v. Mid–Continent Inv. Co.,* 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376 (1944), created an exception to Rule 13(a) for antitrust claims of patent misuse arising out of prior patent infringement litigation, and that the *Mercoid* exception applies here.

---

**3.** C–Vac also brought counterclaims alleging that Minuteman had engaged in false advertising and unfair competition by using misleading language in its warning labels, and seeking monetary damages. *See Minuteman,* 1997 WL 370204, at *8–*9. The Illinois court granted summary judgment for Minuteman on these claims.

Accordingly, we must determine whether C–Vac's allegations of patent misuse should be treated as compulsory counterclaims pursuant to Rule 13(a) and, if so, whether an exception applies pursuant to *Mercoid.*

### A.

■ Minuteman argues that C–Vac's current claims arise out of the same transaction or occurrence as its defenses in the Illinois litigation, and that C–Vac "had" those claims and could have raised them at the time. We agree.

In the Illinois action, C–Vac argued that Minuteman's reissue patent was invalid because it was not based on "error" within the meaning of 35 U.S.C. § 251, which sets forth the standard for reissue. *See Minuteman,* 1997 WL 370204, at *6. This statute entitles a patentee to a reissue patent "[w]henever any patent is, through *error without any deceptive intention,* deemed wholly or partly inoperative or invalid . . . by reason of the patentee claiming more or less than he had a right to claim in the patent." 35 U.S.C. § 251 (emphasis added). The Illinois court held that Minuteman's assertion in its reissue application— that it had committed "error" in its original application by mistakenly using unduly narrow language and that, as a result, it had inadvertently obtained a narrower patent than it was entitled to obtain—was "not credible," because a review of the original application revealed that Minuteman had deliberately adopted the narrower language to distinguish its invention from the prior art. *Minuteman,* 1997 WL 370204, at *7. Accepting C–Vac's argument that Minuteman was not entitled to a reissue patent for claims it had previously surrendered, the Illinois court invalidated Minuteman's reissue patent and granted summary judgment in favor of C–Vac on the issue of non-infringement. *See id.* at *8 ("A court can declare a patent invalid on a summary judgment motion where . . . the [undisputed] facts require a holding of invalidity." (internal quotation marks and citation omitted)).

In the instant case, C–Vac alleges that Minuteman intentionally deceived the Patent Office and knowingly tried to enforce an invalid patent by pursuing sham litigation against C–Vac and other alleged infringers. Specifically, C–Vac alleges that Minuteman "secur[ed] by fraud [ ] a patent for the purpose of preventing C–Vac from competing with Minuteman in the sale of [HEPA filters]"; attempted "to enforce a patent it knew to be invalid"; and used "patent litigation against C–Vac and others to enforce a patent which, even if valid, Minuteman knew was not being infringed and was not enforceable," thereby attempting "to extend the patent beyond its lawful scope." Complaint ¶¶ 1A–1C.

An obvious "logical relationship" exists between these claims and the issues addressed by the earlier patent infringement suit, and "the essential facts of the claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues [should have been] resolved in one lawsuit," as indeed they largely were.[4] *Adam,* 950 F.2d at 92 (internal quotation marks omitted). Moreover, C–Vac has not now alleged any facts that arose after the filing of its answer in the Illinois litigation. Minuteman is correct in asserting that "[a]ll these facts were not only known to C–Vac, they were pleaded in the first action and specifically dealt with in the decision of the Illinois court." Brief of Appellee at 11. Therefore, C–Vac's antitrust claims, which arise out of the same facts, should have been raised in the Illinois action.

---

4. There are two basic differences between C–Vac's claims here and the ones in Illinois: (1) C–Vac now alleges violations of antitrust laws for the first time; and (2) C–Vac is seeking damages instead of declaratory relief. Nevertheless, these claims arise out of the same transaction or occurrence as the Illinois litigation and are therefore within the scope of Rule 13(a).

It is thus clear that C–Vac's claims were compulsory counterclaims in the Illinois action and that, under Rule 13(a), they are barred, unless the asserted *Mercoid* exception applies.

### B.

C–Vac argues that *Mercoid*, 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376, creates an exception to the compulsory counterclaim rule for antitrust suits commenced after patent infringement litigation between the same parties, and that the exception applies here. Minuteman contends that to permit C–Vac to proceed with these claims would expand *Mercoid* beyond its proper scope, both because the facts in *Mercoid* differ significantly from those at bar, and because the theories articulated by C–Vac were not grounds for antitrust claims at the time of the *Mercoid* decision fifty-six years ago. Minuteman's first argument is correct, and it provides a sufficient basis for the District Court's decision to dismiss this action.

We review the facts in *Mercoid* in some detail in order to make clear the distinction between that case and the case before us. In *Mercoid*, the Supreme Court allowed the defendant in a patent infringement lawsuit, the Mercoid Corporation ("Mercoid"), to raise an antitrust counterclaim that it had failed to raise in a prior patent infringement lawsuit brought by the same plaintiff, the Mid–Continent Investment Corporation ("Mid–Continent"). *See Mercoid*, 320 U.S. at 669–72. Mid–Continent was the holder of a patent for a domestic heating system composed of a furnace and a separate thermostatic control device. In the earlier proceeding, Mid–Continent had sued a Mercoid customer by the name of E.O. Smith for patent infringement as a result of his installation of a heating system in his home that used a thermostatic control device manufactured by Mercoid. *See Mid–Continent Inv. Co. v. Smith*, 35 U.S.P.Q. 204 (W.D.Mo.1937). Mercoid was not made a party to the lawsuit, but directed and paid

for its customer's unsuccessful defense. *See Mid–Continent Inv. Co. v. Mercoid Corp.*, 43 F.Supp. 692, 693 (N.D.Ill.1942) (providing, in a subsequent case, a brief history of the prior litigation).

After prevailing against Smith, Mid–Continent sought to initiate settlement negotiations with Mercoid for having installed thermostatic control devices in other homes, and sent Mercoid a license agreement that would have required payment of a license fee for the sale of each such device. *See Mid–Continent*, 43 F.Supp. at 694–95. When Mercoid refused to cooperate, Mid–Continent filed a second patent infringement suit—this time against Mercoid—in the Northern District of Illinois. *See id.* at 692. Mercoid responded with an antitrust counterclaim challenging Mid–Continent's licensing practices and seeking damages under the Sherman Act. *See id.*

Mercoid prevailed in the District Court, *see id.*, but lost on appeal, *see Mid–Continent Inv. Co. v. Mercoid Corp.*, 133 F.2d 803 (7th Cir.1942). The Seventh Circuit held that Mercoid was liable for contributory infringement, that Mid–Continent's licensing efforts were proper, and that Mercoid was barred by principles of res judicata from raising its antitrust counterclaim because it had failed to raise the claim when it defended Smith in the earlier proceeding. *See id.* at 811.

The Supreme Court reversed. *See Mercoid*, 320 U.S. 661, 64 S.Ct. 268. Writing for a 5–4 majority, Justice Douglas began by observing that "[t]he grant of a patent is the grant of a special privilege," *id.* at 665, 64 S.Ct. 268, and that Mid–Continent's actions were "a graphic illustration of the evils of an expansion of the patent monopoly by private engagements," *id.* at 666, 64 S.Ct. 268. Reasoning that Mid–Continent's patent covered only the heating system, not its individual components, Justice Douglas explained that Mid–Continent's misuse of its patent "for the purpose of monopolizing unpatented material" barred relief against Mercoid. *Id.* at 668, 64 S.Ct. 268.

Justice Douglas then rejected Mid–Continent's argument that res judicata barred Mercoid's defenses and counterclaim for damages. That argument, he reasoned, would place the Court's "imprimatur on a scheme which involves a misuse of the patent privilege and a violation of the antitrust laws. It would aid in the consummation of a conspiracy to expand a patent beyond its legitimate scope." *Id.* at 670, 64 S.Ct. 268. Turning specifically to Mercoid's counterclaim, Justice Douglas wrote:

> Though Mercoid were barred in the present case from asserting any defense which might have been interposed in the earlier litigation, it would not follow that its counterclaim for damages would likewise be barred. That claim for damages is more than a defense; it is a separate statutory cause of action. The fact that it might have been asserted as a counterclaim in the prior suit by reason of Rule 13(b) of the Rules of Civil Procedure does not mean that the failure to do so renders the prior judgment res judicata as respects it.

*Id.* at 671, 64 S.Ct. 268. As this passage indicates, the Court treated Mercoid's counterclaim as permissive, citing Rule 13(b),[5] rather·than as compulsory pursuant to Rule 13(a). Justice Douglas continued:

> The case is then governed by the principle that where the second cause of action between the parties is upon a different claim the prior judgment is res judicata not as to issues which might have been tendered but "only as to

those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered." *Id.* (quoting *Cromwell v. County of Sac,* 94 U.S. 351, 353, 24 L.Ed. 195 (1876)). Concluding that the previous lawsuit had resolved different "matters in issue or points controverted" than those involved in the dispute before it, the Court held that principles of res judicata did not bar Mercoid's antitrust counterclaim for damages. *See id.*

■ The Court thus applied the permissive counterclaim rule, or Rule 13(b), to an antitrust claim arising out of the same transaction or occurrence as earlier patent infringement litigation between the same parties. In doing so, the Court effectively created an exception to the more stringent requirements of Rule 13(a)—which *requires* a party to raise as a counterclaim any claim arising out of the same transaction as earlier litigation between the same parties, and which *should* have required Mercoid to raise its antitrust claims in the earlier litigation or lose them—without acknowledging or explaining the exception as such. We have observed that *Mercoid* "fail[ed] . . . to discuss the principles on which [its] decision rest[ed]," and have held that the *Mercoid* exception to Rule 13(a) should be limited to the facts in that case. *United States v. Eastport Steamship Corp.,* 255 F.2d 795, 805 (2d Cir.1958). We reiterate that view here, and conclude that the *Mercoid* exception does not apply to C–Vac's claims in the instant lawsuit.[6]

---

**5.** Federal Rule of Civil Procedure 13(b) provides: "**Permissive Counterclaims.** A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim."

**6.** It bears noting that, for generations, the *Mercoid* decision has been subject to serious criticism by the courts and by commentators. *See Eastport,* 255 F.2d at 805 (limiting *Mercoid* to its facts); *see also, e.g., Burlington Indus. Inc v. Milliken & Co.,* 690 F.2d 380, 389 (4th Cir.1982) (*Mercoid*'s "continuing validity is open to serious question"); *Longwood Mfg. Corp. v. Wheelabrator Clean Water Sys.,*

*Inc.,* 954 F.Supp. 17, 18 (D.Me.1997) (*Mercoid* has been "roundly criticized"); *USM Corp. v. SPS Tech., Inc.,* 102 F.R.D. 167, 169–70 (N.D.Ill.1984) ("overwhelmingly criticized"); *Lewis Mfg. Co. v. Chisholm–Ryder Co.,* 82 F.R.D. 745, 750 (W.D.Pa.1979) ("criticized in detail"); *Borden Co. v. Sylk,* 42 F.R.D. 429, 432 (E.D.Pa.1967) (*Mercoid* "assumed" without holding that counterclaim before it was permissive); *Douglas v. Wisconsin Alumni Research Found.,* 81 F.Supp. 167, 170 (N.D.Ill.1948) (noting "inherent weaknesses in the rationale of the *Mercoid* decision"); 3 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 13.12[2] (3d ed.1999);

Our conclusion is based on a recognition of the distinction between claims of patent *misuse* and claims of patent *invalidity*. Specifically, Mercoid's antitrust counterclaim was based on Mid–Continent's misuse of a *valid* patent, whereas C–Vac's antitrust claims in the instant suit are based on Minuteman's attempt to enforce an *invalid* reissue patent. Unlike the patentee in *Mercoid*, Minuteman did not use private license agreements to expand its monopoly. Rather, Minuteman obtained an invalid reissue patent by using broad claim language and, then, instituted patent infringement litigation to enforce this patent. Although the *Mercoid* Court did not explain why the "evil" at issue in that case—the misuse of a valid patent—should render permissive an otherwise compulsory counterclaim, it was nevertheless that particular "evil," and *not* the attempted enforcement of an invalid patent, that the Court sought to address by carving out an exception to Rule 13(a).

Moreover, the patent misuse/patent validity distinction provides a sensible rationale for the *Mercoid* exception to Rule 13(a). Antitrust claims based on patent *misuse*, such as the counterclaims in *Mercoid*, are likely to involve factual issues distinct from those involved in patent infringement litigation between the same parties. Indeed, this seems to have been true in *Mercoid*—as the Supreme Court observed in that case, Mercoid's antitrust counterclaims involved *different* "matters in issue or points controverted" from those involved in the earlier patent infringement litigation. *Mercoid*, 320 U.S. at 671, 64 S.Ct. 268.[7] In contrast, antitrust claims based on patent *invalidity*, such as C–Vac's claims in the instant case, will generally involve the *same* factual issues as those involved in patent infringement litigation between the same parties—as they do here. As a result, an exception to Rule 13(a) for at least some patent misuse claims will, in fact, generally be *consistent* with the purpose of that rule—that is, with the resolution of all "logically connected" claims between the same parties in the same proceeding, *see Adam*, 950 F.2d at 92—whereas an exception to Rule 13(a) for patent invalidity claims would generally contradict the purpose of that rule. As one commentator has explained:

If patent infringement claims are frequently bifurcated from antitrust counterclaims and tried separately under Rule 42(b), it would seem that the same underlying logic would apply equally to Rule 13(a). In other words, if judicial economy is promoted by severing two claims and trying them separately, it would seem inappropriate and illogical to regard either claim as a compulsory counterclaim to the other and require consolidation. *The task, then, is to determine whether consolidation of the two claims would promote the basic purposes of Rule 13(a).*

[In][a]ntitrust counterclaims related to patent *validity* ..., the determination of validity bears directly on the issue of infringement, thus suggesting that the two claims should be litigated in tandem. On the other hand, counterclaims related to *misuse* and other more economi-

WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 1412, at 90–91 (1990). However, *Mercoid* has never been overruled and recently two of our sister Circuits have recognized its continuing vitality. *See Tank Insulation Int'l, Inc. v. Insultherm, Inc.*, 104 F.3d 83, 87–88 (5th Cir.1997); *Hydranautics v. FilmTec Corp.*, 70 F.3d 533, 536 (9th Cir. 1995). To the extent that these opinions suggest that *Mercoid* creates an exception so broad that it applies to *any* antitrust claim following a patent infringement suit between the same parties, we decline to adopt their view. Rather, we adhere to our own prece-dent in limiting the holding in *Mercoid* to its own set of facts. *See Eastport*, 255 F.2d at 805.

7. In fact, to the extent that the "matters in issue or points controverted" in an antitrust claim are so different from those involved in prior litigation between the same parties that *no logical connection* seems to exist between them, the compulsory counterclaim rule would not bar the antitrust claim in any event.

cally oriented antitrust claims would seem generally to be distinct in nature and substance from patent validity and infringement issues. These types of antitrust counterclaims should be tried separately as a general rule and, accordingly, should usually be deemed permissive under Rule 13(b), subject of course to the court's discretion.

Teague I. Donahey, *Antitrust Counterclaims in Patent Infringement Litigation: Clarifying the Supreme Court's Enigmatic* Mercoid *Decision,* 39 IDEA: J.L. & TECH. 225, 249–50 (1999) (emphasis added) (citations omitted).[8] In short, an exception to Rule 13(a) for certain patent *misuse* claims generally serves the goal of judicial economy, whereas an exception for patent *invalidity* claims is likely to subvert that goal.

The distinction between patent misuse and patent invalidity claims thus provides an appropriate rationale for *Mercoid*'s exception to Rule 13(a), and an adequate explanation of the reason why that exception does not apply to C–Vac's claims. In the absence of further guidance in *Mercoid,* we regard the patent misuse/patent validity distinction as a practical and useful way of distinguishing between *Mercoid* and the case at bar, and hold that the *Mercoid* exception to Rule 13(a) does not apply to antitrust claims that raise the issue of patent validity and are, therefore, logically connected to the issue of patent infringement.[9]

Accordingly, we conclude that the *Mercoid* exception does not apply to the C–Vac antitrust claims at issue here. Because these claims rest on allegations of patent invalidity, they were compulsory counterclaims in the Illinois patent infringement litigation and, under Rule 13(a), should have been asserted there. C–Vac's claims in the instant action are therefore barred.

### III.

For the reasons stated above, we hold that C–Vac's claims are compulsory counterclaims under Rule 13(a) and that the *Mercoid* exception does not apply. Accordingly, we AFFIRM the order of the District Court.

**8.** Federal Rule of Civil Procedure 42(b), cited by Donahey in the quoted passage, provides:

   **(b) Separate Trials.** The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

**9.** Our holding in this case does not imply that *any* antitrust claim raising the issue of patent misuse will necessarily benefit from an exception to Rule 13(a) under *Mercoid.* Whether an antitrust claim based on patent misuse is so logically connected to a claim of patent infringement as to constitute a compulsory counterclaim under Rule 13(a) is a determination that courts must make on the basis of the facts presented in the particular case.