**EON LABORATORIES,
INCORPORATED,
Plaintiffs,**

v.

**SMITHKLINE BEECHAM CORPORATION d/b/a Glaxosmithkline, Beecham Group PLC, Glaxosmithkline PLC, Carl J. Rose, and Richard K. Anderson Defendants.**

No. CIV.A. 03–10506–WGY.

United States District Court,
D. Massachusetts.

Dec. 23, 2003.

Bernard J. Bonn, III, Dechert LLP, Boston, MA, George G. Gordon, Dechert LLP, Philadelphia, PA, Timothy C. Hester, Covington & Burling, Washington, DC, Kevin T. Kerns, Dechert LLP, Phila-delphia, PA, Matthew A. Porter, Dechert LLP, Boston, MA, Christopher N. Sipes, Covington & Burling, Washington, DC, Joseph A. Tate, Dechert LLP, Philadelphia, PA, for Beecham Group PLC, Defendant.

Thane D. Scott, Palmer & Dodge, LLP, Boston, MA, for Eon Labs, Inc., Plaintiff.

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

### I. INTRODUCTION

After hearing oral argument on October 23, 2003, this Court stated its intent to dismiss the federal antitrust claims asserted by the plaintiff, Eon Laboratories, Inc. ("Eon"), as compulsory counterclaims that were not raised in the underlying patent infringement action. *See* Hr'g Tr. of 10/23/03, at 8. This memorandum and order sets forth the Court's analysis and clarifies its decision.

### II. BACKGROUND

This is a consolidated action against SmithKline Beecham Corporation, Beecham Group PLC, and GlaxoSmithKline PLC (collectively "SmithKline") for violations of the antitrust laws related to its patent for the chemical compound nabumetone, which it sells commercially as "Relafen." After successfully defending against SmithKline's action to enforce its patent, Eon, a manufacturer of generic nabumetone, initiated suit against SmithKline, asserting violations of federal and state antitrust laws, violation of the Massachusetts Consumer Protection Act, tortious interference with contractual and business relationships, and malicious prosecution. Am. Compl. [Doc. No. 1]. SmithKline here moves to dismiss Eon's claims as barred by the doctrine governing compulsory counterclaims, and the relevant statutes of limitations. [Doc. No. 5].

## A. Factual Background [1]

On December 13, 1983, SmithKline received U.S. Patent No. 4,420,639 (the "'639 patent") for the compound nabumetone, a non-steroidal anti-inflammatory drug. SmithKline commenced commercial sales of nabumetone under the brand name Relafen in February, 1992. In August, and December, 1997, generic drug manufacturers Copley Pharmaceutical, Inc. ("Copley"), Teva Pharmaceutical Industries, Ltd. and Teva Pharmaceuticals USA ("Teva"), and Eon sought approval from the Food and Drug Administration (the "FDA") to market generic nabumetone. Upon commencement of SmithKline's lawsuits to enforce its '639 patent, however, the FDA stayed approval of the generic drugs for thirty months. On August 8, and December 24, 1998, the FDA issued tentative approval to Teva's and Eon's generic nabumetone products, but withheld final approval until the conclusion of the thirty-month stay period. That stay period terminated in May, 2000.

SmithKline filed the patent suits in question on October 27, 1997 (against Copley), November 13, 1997 (against Teva), and February 17, 1998 (against Eon). After a bench trial, Judge Lindsay of this district issued a sixty-seven-page opinion, which found, *inter alia*, that (1) claims 2 and 4 of the '639 patent were invalid as anticipated by prior art; and (2) the '639 patent was unenforceable because of SmithKline's inequitable conduct before the Patent Office. *In re '639 Patent Litig.*, 154 F.Supp.2d 157, 194–95 (D.Mass.2001) (Lindsay, J.). On August 15, 2002, the

Federal Circuit affirmed the district court's decision as to the validity of the '639 patent but did not reach the issue of inequitable conduct. *SmithKline Beecham Corp. v. Copley Pharm., Inc.*, 45 Fed. Appx. 915, 917 (Fed.Cir.2002) (unpublished).

Essentially, Eon asserts that but for SmithKline's wrongful filing of patent lawsuits, it could have entered the market for generic nabumetone as early as June, 1999, six months after Teva, the first generic applicant, received tentative approval from the FDA. Pl.'s Opp'n [Doc. No. 12] at 1. Because of the pending litigation, however, Teva and Eon could not begin marketing their generic products until after the stay period terminated and SmithKline's patent was invalidated. Teva[2] began marketing its generic products in August, 2001, with Eon following suit in February, 2002.

## B. Procedural Background

On March 18, 2003, Eon initiated suit against SmithKline, claiming violations of federal and state law that excluded competing manufacturers from the market for nabumetone. [Doc. No. 1]. More specifically, Eon alleges that SmithKline engaged in a course of anticompetitive conduct that included fraudulently procuring the '639 patent, listing it with the FDA, and prosecuting sham litigation to enforce it. Am. Compl. ¶¶ 158, 171. Eon asserts claims for violation of the Sherman Act (Claims I and II), violations of the antitrust and unfair trade practices statutes of forty-one

---

1. Unless otherwise indicated, these facts are drawn from the Court's Memorandum and Order, issued October 1, 2003, which addressed the parties' motions based on the statute of limitations and the doctrine of collateral estoppel. *In re Relafen Antitrust Litig.*, 286 F.Supp.2d 56 (D.Mass.2003). Consistent with the standard for reviewing motions to

dismiss, the Court "accept[s] as true all well-pleaded factual averments and indulg[es] all reasonable inferences in the plaintiff's favor." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996).

2. Teva acquired Copley (and its generic nabumetone products) in August, 1999.

states (Claim III), violation of the Massachusetts Consumer Protection Act (Claim IV), tortious interference with contractual and business relationships (Claim V), malicious prosecution (Claim VI), and unjust enrichment (Claim VII).

In a Memorandum and Order issued October 1, 2003, this Court addressed and denied SmithKline's motions to dismiss the claims of plaintiff purchasers. *In re Relafen Antitrust Litig.*, 286 F.Supp.2d 56 (D.Mass.2003). SmithKline here moves to dismiss the claims of Eon, a plaintiff competitor and party to the underlying patent infringement action. [Doc. No. 5]. At the oral hearing on the present motion, the Court suggested that Eon's different situation required a different analysis. *See* Hr'g Tr. of 10/23/03, at 2. The Court concluded that under this analysis, Eon's federal antitrust claims were likely barred as compulsory counterclaims not raised in the underlying infringement action. *Id.* at 8.

## II. DISCUSSION

SmithKline asserts two "independent bases" for its motion to dismiss: the doctrine governing compulsory counterclaims, and the relevant statutes of limitations. Def.'s Mot. at 1. Finding the first of these bases persuasive, the Court begins its analysis there.

### A. Eon's Federal Claims as Compulsory Counterclaims

 Under Rule 13(a) of the Federal Rules of Civil Procedure, "[a] pleading shall state as a counterclaim any claim [that] arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . ." Fed.R.Civ.P. 13(a). The First Circuit has outlined four tests to determine whether a counterclaim is compulsory under Rule 13(a):

(1) Are the issues of fact and law raised by the claim and counterclaim largely the same?

(2) Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule?

(3) Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim?

(4) Is there any logical relation between the claim and the counterclaim?

*Iglesias v. Mutual Life Ins. Co.*, 156 F.3d 237, 241 (1st Cir.1998). If a counterclaim satisfies one of these tests "but is not brought," it is "thereafter barred." *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 41 L.Ed.2d 243 (1974).

 The fourth test described above, the "logical relationship" test, "enjoys 'by far the widest acceptance among the courts.'" *McCaffrey v. Rex Motor Transp., Inc.* 672 F.2d 246, 248 (1st Cir. 1982) (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1410 (1971)). A counterclaim has a logical relationship to the original claim if "it arises out of the same aggregate of operative facts as the original claim" in the sense that "the same aggregate of operative facts serves as the basis of both claims"; or "the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant." *McCaffrey*, 672 F.2d at 249 (quoting *Revere Copper & Brass Inc. v. Aetna Casualty & Surety Co.*, 426 F.2d 709, 715 (5th Cir.1970)). Here, Eon does not dispute that its claims—alleging the procurement and enforcement of the invalid '639 patent—have some logical relation to SmithKline's original claim of infringement of the same patent. *See* Pl.'s Opp'n at 18. Rather, Eon argues that its claims

fall within an exception to Rule 13(a). *Id.* at 16–18.

### 1. *Mercoid* Exception

#### a. *Mercoid Corp. v. Mid–Continent Investment Co.*

In *Mercoid Corp. v. Mid–Continent Investment Co.,* 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376 (1944), the Supreme Court characterized a claim for antitrust damages as a permissive, not compulsory, counterclaim to a prior claim of patent infringement. There, the Supreme Court allowed the Mercoid Corporation ("Mercoid") to raise an antitrust counterclaim that it had failed to assert in a prior patent infringement suit brought by the patentee, Mid–Continent Investment Corporation ("Mid–Continent"). *Mercoid,* 320 U.S. at 671, 64 S.Ct. 268. Arguing for the dismissal of this claim, Mid–Continent asserted that Mercoid knew of the challenged conduct when the earlier patent infringement suit was initiated, and although Mercoid was not made a party to that earlier suit, it provided the defense. *Id.* at 669, 64 S.Ct. 268.

The Supreme Court rejected Mid–Continent's argument, stating:

> Though Mercoid were barred in the present case from asserting any defense which might have been interposed in the earlier litigation, it would not follow that its counterclaim for damages would likewise be barred. That claim for damages is more than a defense; it is a separate statutory cause of action. The fact that it might have been asserted as a counterclaim in the prior suit by reason of Rule 13(b) of the Rules of Civil Procedure does not mean that the failure to do so renders the prior judgment res judicata as respects it.

*Id.* at 671, 64 S.Ct. 268. In this manner, the Supreme Court effectively created what has been described as "an exception to the more stringent requirements of Rule 13(a)." *Critical–Vac Filtration Corp., v. Minuteman Int'l, Inc.,* 233 F.3d 697, 702 (2d Cir.2000). As the Second Circuit has explained, Rule 13(a) "*should* have required Mercoid to raise its antitrust claims[, which arose out of the same transaction as Mid–Continent's infringement claim,] in the earlier litigation or lose them," but the Supreme Court "effectively created an exception ... without acknowledging or explaining the exception as such." *Id.*

In another patent infringement case presenting facts similar to those of *Mercoid,* the First Circuit held that the district court "did not abuse its discretion in denying defendants' motion to amend the pleadings" to add, *inter alia,* a claim for antitrust damages. *Fowler v. Sponge Products Corp.,* 246 F.2d 223, 227 (1st Cir.1957). The First Circuit declined to "undertak[e] a detailed discussion of this point," noting only that the defendants certainly were not prejudiced "since the Supreme Court has clearly stated that a counterclaim for treble damages is permissive in nature so that failure by a defendant to plead it in a prior patent suit does not bar a subsequent independent suit by him under the anti-trust laws." *Id.* (citing *Mercoid,* 320 U.S. 661, 64 S.Ct. 268). No more recent First Circuit cases have addressed the issue.

For many years both before and after *Fowler* was decided, the Supreme Court's *Mercoid* decision has been the subject of extensive criticism. *See, e.g., Burlington Indus. Inc. v. Milliken & Co.,* 690 F.2d 380, 389 (4th Cir.1982) (holding that *Mercoid's* "continuing validity is open to serious question"); *Douglas v. Wisconsin Alumni Research Found.,* 81 F.Supp. 167, 170 (N.D.Ill.1948) (noting "inherent weaknesses in the rationale of the *Mercoid* decision"); 6 Charles A. Wright, Arthur R.

Miller & Mary Kay Kane, *supra*, § 1412. Notwithstanding this criticism, *Mercoid* has never been overruled and two courts of appeals recently recognized its continuing validity. *Tank Insulation Int'l, Inc. v. Insultherm, Inc.*, 104 F.3d 83, 87–88 (5th Cir.1997); *Hydranautics v. FilmTec Corp.*, 70 F.3d 533, 536 (9th Cir.1995).

### b. Misuse Versus Validity

The Second Circuit, however, recently rendered a careful decision imposing an important limit on the application of the *Mercoid* exception. *See Critical–Vac*, 233 F.3d at 703. The court stated that antitrust claims based on the misuse of a patent through, for example, improper licensing arrangements—the claims at issue in *Mercoid*—must be distinguished from antitrust claims based on the enforcement of an invalid patent—the claims at issue in *Critical–Vac*. The court believed that such a distinction, between patent misuse and patent validity, "provides a sensible rationale for the *Mercoid* exception to Rule 13(a)":

> Antitrust claims based on patent *misuse*, such as the counterclaims in *Mercoid*, are likely to involve factual issues *distinct* from those involved in patent infringement litigation between the same parties.... In contrast, antitrust claims based on patent *invalidity*, such as C–Vac's claims in the instant case, will generally involve the *same* factual issues as those involved in patent infringement litigation between the same parties—as they do here. As a result, an exception to Rule 13(a) for at least some patent misuse claims will, in fact, generally be consistent with the purposes of that rule—that is, with the resolution of all "logically connected" claims between the same parties in the same proceeding—whereas an exception to Rule 13(a) for patent invalidity claims

would generally contradict the purpose of that rule.

*Id.* (internal citations omitted).

■ The Court notes that the First Circuit has not considered the patent misuse/patent validity distinction drawn by the Second Circuit in *Critical–Vac*. Finding both the Second Circuit's reasoning and the extensive criticism of *Mercoid* persuasive, the Court concludes that neither *Mercoid* nor *Fowler* are controlling here because Eon's present claims allege enforcement of an invalid patent rather than patent misuse. For this reason, the Court does not feel itself "bound by *Fowler*," as did Judge Woodlock, who addressed the issue with respect to claims of patent misuse before the Second Circuit issued its decision in *Critical–Vac*. *See Boston Scientific Corp. v. Schneider (Europe) AG*, 983 F.Supp. 245, 268 (D.Mass.1997) (Woodlock, J.). The Court thus rejects Eon's argument based on the *Mercoid* exception.

### 2. Maturity Exception

■ Eon argues that its claims also fall within the exception to Rule 13(a) for counterclaims that had not matured at the time a party served its pleading. Pl.'s Opp'n at 18; *see also* 6 Wright, Miller & Kane, *supra*, § 1411. Eon contends that its claims did not mature until the "first date under the applicable FDA regulations when it could have entered the nabumetone market but for GSK's patent infringement suit," which date was more than one year after Eon filed its answer in the underlying litigation. Pl.'s Opp'n at 18.

■ This position, however, overlooks the different analysis required by Eon's different situation. In its Memorandum and Order issued October 1, 2003, this Court determined that with respect to plaintiff purchasers of Relafen, "[i]t would have been entirely speculative in early 1998 to determine how a less competitive

market would lead to injuries to purchasers because it would require one to speculate as to whether there would be any competitors." *In re Relafen Antitrust Litig.*, 2003 WL 22357954 (D.Mass.2003). As one of these competitors, however, Eon was not required to engage in any such speculation. Before SmithKline filed suit against Eon in February, 1998, Eon had filed with the FDA an application to manufacture and market generic nabumetone and a certification asserting that the '639 patent was invalid and unenforceable. *In re '639 Patent Litig.*, 154 F.Supp.2d at 159. Indeed, Eon asserts that absent Smith-Kline's alleged anticompetitive conduct, it could have filed its application even earlier, on December 24, 1996, and entered the market as early as June 22, 1997. Am. Compl. § 51. Although Eon had not yet received FDA approval of its application in early 1998, it nevertheless could have asserted a valid antitrust claim based on the claim that "FDA approval was probable." *Andrx Pharmaceuticals, Inc. v. Biovail Corp. Intern.*, 256 F.3d 799, 808 (D.C.Cir. 2001). For these reasons, the Court also rejects Eon's argument based on the maturity exception. Eon's federal antitrust claim is accordingly barred as a compulsory counterclaim not asserted in the underlying patent infringement action.

## B. Eon's State–Law Claims as Compulsory Counterclaims

In its submissions and at oral argument, Eon apparently assumed that any conclusions characterizing its federal claims as compulsory counterclaims were simply inapplicable to its state-law claims. *See* Pl.'s Opp'n at 19 (suggesting that Eon's state law claims present an independent basis for jurisdiction and therefore may not be dismissed); Hr'g Tr. of 10/23/03 at 10 ("We also have three state law based claims .... I assume they're not involved in this motion or this decision."). Although the Court initially expressed its agreement with Eon's assumption, *see* Hr'g Tr. of 10/23/03 at 10, upon further consideration, it offers the following clarifications.

■ The compulsory counterclaim analysis, as required by Rule 13(a) and clarified in *Iglesias*, does not ask whether a claim is based in federal or state law, but rather, whether it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed.R.Civ.P. 13(a); *see Carter v. Public Fin. Corp.* 73 F.R.D. 488, 495 (D.Ala.1977) (finding it "immaterial," for purposes of Rule 13(a), that the claim is based in federal law and the counterclaim is based in state law). Accordingly, this Court may determine that Eon's state claims were compulsory counterclaims in the underlying patent enforcement action—and therefore barred—notwithstanding their basis in "a different body of law" and their association with "different remedies." *Tapalian v. Town of Seekonk*, 188 F.Supp.2d 136, 139 (D.Mass.2002) (Saris, J.); *see also Bottero Enters., Inc. v. Southern New England Prod. Credit Ass'n*, 743 F.2d 57 (1st Cir.1984) (barring the plaintiff's state-law claim as a "compulsory counterclaim that should have been brought in the prior [admiralty] action").

■ Even assuming that the Court might in certain circumstances recognize a distinction between federal and state counterclaims, two factors counsel against such recognition here. First, the claim of patent infringement asserted in the underlying action is one over which the federal courts exercise exclusive jurisdiction. 28 U.S.C. § 1338(a). Under such circumstances, the policies of Rule 13(a)—"to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters," *Southern Const. Co. v. Pickard*, 371 U.S. 57, 60, 83

S.Ct. 108, 9 L.Ed.2d 31 (1962)—is best served by requiring defendants to assert both federal and state counterclaims in the underlying federal action. In the related context of supplemental jurisdiction, which is animated by a similar concern for judicial economy, the First Circuit has recognized that "when the jurisdiction-conferring claim must be brought in federal court, both claims may be heard in the same forum only if pendent jurisdiction is exercised. In these cases, the rationale favoring settlement of all issues in a single forum is most convincing." *Bowers v. Moreno*, 520 F.2d 843, 847 (1st Cir.1975) (quoting Comment, *Federal Pendent Subject Matter Jurisdiction: The Doctrine of United Mine Workers v. Gibbs Extended to Persons Not Party to the Jurisdiction–Conferring Claims*, 73 Col. L.Rev. 153, 165 (1973)) (footnotes omitted).

■ Second, the distinctions that might otherwise exist between federal and state counterclaims are blurred here, where several of Eon's claims arise under state statutes that—at least with respect to the conduct regulated—direct courts to look to federal statutes for interpretative guidance. Claim III of Eon's Amended Complaint, for example, asserts claims under the antitrust laws of states including Arizona and North Carolina. Arizona's Uniform State Antitrust Act contains what the Arizona Supreme Court has termed a "federal guidance clause," which permits interpreting courts to "use as a guide interpretations given by the federal courts to comparable federal antitrust statutes." *Bunker's Glass Co. v. Pilkington PLC*, 206 Ariz. 9, 75 P.3d 99, 102 (2003) (quoting Ariz.Rev.Stat. § 44–1412). North Carolina courts similarly consider federal interpretations of the federal antitrust laws as "persuasive," but not binding, authority in construing the state's antitrust statutes. *Hyde v. Abbott Labs., Inc.*, 123 N.C.App.

572, 473 S.E.2d 680, 685 (1996). Along the same lines, Claim IV of Eon's Amended Complaint arises under Section 2 of the Massachusetts Consumer Protection Act, which directs interpreting courts to seek guidance in "the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act." Mass. Gen. Laws ch. 93A § 2(b). Finally, Claim VII of Eon's Amendment Complaint asserts a cause of action for unjust enrichment. In its Memorandum in Opposition, Eon describes the "essential nature" of this claim as that of an "antitrust and unfair competition" claim. Pl.'s Opp'n at 10. As stated above, many of the state antitrust and unfair competition statutes cited by Eon are interpreted consistently with analogous federal statutes. For these reasons, the distinctions between Eon's federal and state claims prove largely superficial. Accordingly, Eon's state-law claims, like its federal claim, appear barred as compulsory counterclaims unless they fall within an exception to the application of Rule 13(a).

■ For the reasons stated above, the Court rejected Eon's argument that the maturity exception applied to its federal antitrust claim. The Court finds this reasoning equally applicable to Eon's state-law claims, save for its claim for malicious prosecution. Unlike Eon's other state-law claims, its claim for malicious prosecution "depends upon the outcome of some other lawsuit and thus does not come into existence until the action upon which it is based has terminated." 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *supra*, § 1411 (citing, as an example of such a claim, a claim for malicious prosecution, which "cannot be a compulsory counterclaim in the allegedly wrongfully prosecuted action"). Because Eon could not establish an essential element of its

claim for malicious prosecution—the termination of the proceedings in its favor—until the underlying action had concluded, *see* Restatement (Second) of Torts § 674, Eon need not have asserted this claim in the underlying patent enforcement action. Accordingly, Eon is not barred from asserting a claim for malicious prosecution in the present action.

Having determined that Eon's claims, save for its claim for malicious prosecution, are barred as compulsory counterclaims, the Court need not address SmithKline's alternative argument regarding the relevant statutes of limitations.

## III. CONCLUSION

Accordingly, SmithKline's Motion to Dismiss [Doc. No. 5] is ALLOWED in part and DENIED in part. The motion is DENIED with respect to Eon's claim for malicious prosecution, and otherwise ALLOWED.

SO ORDERED.